# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CSABA BESSKO**, Individually and as Executor of the ESTATE OF ARPAD SOOKY, Decedent, and on behalf of the Estate's Beneficiaries, Magdalena Sooky and Attila Sooky.<br><br>Plaintiffs,<br><br>v.<br><br>**CENTER TOWNSHIP**, a Municipal Corporation, **WILLIAM CALVIN PEAKE**, individually and in his official capacity, **DARIN K. HEPLER**, individually and in his official capacity, **KRISTEN BROWN**, individually and in her official capacity, **DETECTIVE THOMAS GONCZI**, individually and in his official capacity, and **CAPTAIN JON HALL**, individually and in his official capacity.<br><br>Defendants. | **Civil Action**<br><br>**No.:**      2:23-cv-1778<br><br>**COMPLAINT IN CIVIL ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

## Complaint in Civil Action

AND NOW comes the Plaintiff, Csaba Bessko, individually and as Executor of the Estate of Arpad Sooky, Decedent, on behalf of the Estate's beneficiaries, Magdalena Sooky and Attila Sooky, by and through their undersigned counsel, Todd J. Hollis, Esquire, of Todd J. Hollis Law, who files the following Complaint in Civil Action to recover damages for injuries and death sustained as a result of the Defendants' deliberate indifference to the serious medical needs of the Decedent during the Defendants'  arrest of the Decedent on August 12, 2022 in violation of his rights under the United States Constitution and their failure to provide him with necessary care, stating in support thereof as follows:

**Jurisdiction and Venue**

1. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

2. This Honorable Court has jurisdiction of the within matters pursuant to 28 U.S.C. §§1331 and §§1343 as the causes of action enumerated herein arise under the Constitution, treaties, or laws of the United States.

3. In particular, the causes of action enumerated herein arise under the Civil Rights Act of 1871, as amended, 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments of the United States Constitution. Further, this Honorable Court has supplemental jurisdiction of state law claims pursuant to 28 U.S.C. §1367(a).

4. Venue is properly laid in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because: (a) Defendants reside in and/or conduct business in this judicial district; and/or (b) the acts and omissions giving rise to the claims set forth herein (including specifically the Decedent's arrest by Defendant officers and the injuries and death resulting therefrom) occurred exclusively in this judicial district.

**Parties**

5. The Decedent was, at the time of his death, a forty-three (43)-year-old man who resided in Aliquippa County, Pennsylvania.

6. Plaintiff is Csaba Bessko, Executor of the Estate of Arpad Sooky. Mr. Bessko is a resident of Lee County, Florida. As Executor of the Estate to which Magdalena Sooky and Attila Sooky are beneficiaries, Mr. Bessko's actions on behalf of the Estate are for the benefit of the Estate and it's beneficiaries.

7. Defendant, Center Township, is a municipality in the Commonwealth of Pennsylvania, which, at all relevant times, employed the Center Township police officers who were at the scene of the Decedent's arrest and transported him and who committed and/or participated in the wrongful acts alleged herein and/or did nothing to prevent the Defendant officers' illegal acts.

8. Defendant William Calvin Peake is/was a Center Township police officer who, at all relevant times, was employed by the Defendant Center Township. At all times relevant hereto, Defendant Peake was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

9. Defendant Darin K. Hepler is/was a Center Township police officer who, at all relevant times, was employed by the Defendant Center Township. At all times relevant hereto, Defendant Hepler was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

10. Defendant Kristen Brown is/was a Center Township police officer who, at all relevant times, was employed by the Defendant Center Township. At all times relevant hereto, Defendant Brown was acting within the scope of her employment as such. She is being sued both in her individual and official capacity.

11. Defendant Detective Thomas Gonczi is/was a Center Township police officer who, at all relevant times, was employed by the Defendant Center Township. At all times relevant hereto, Defendant Gonczi was acting within the scope of his employment as such. He is being sued both in his individual and official capacity

12. Defendant Captain Jon Hall is/was a Center Township police officer who, at all relevant times, was employed by the Defendant Center Township. At all times relevant hereto, Defendant Hall was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

## **Jury Demand**

13. Plaintiff demands trial by jury in this action.

## **Introduction**

14. This action arises from the wrongful death of the Decedent, Mr. Arpad Sooky, caused by Center Township and its police officers.

15. On the afternoon of August 12, 2022, Mr. Arpad Sooky (hereinafter, "the Decedent"), a 43-year-old man, died after a number of Center Township police officers, including the defendants—who:

    a.  knew he had a long mental health history,
    b.  knew he had experienced numerous suicidal ideations and attempts, and
    c.  knew he owned multiple guns

    tasered him multiple times, and then, without providing him medical or mental health care or assessing his physical condition or searching his person to determine if he was in possession of any weapons with which he could harm himself or properly securing  his hands, placed him in the back of a patrol car, in which, while being transported, the Decedent retrieved a handgun in his waist band and shot and killed himself.

16. Specifically, on August 12, 2022, the Decedent was a mentally ill, 43-year-old man, who was being served with a search warrant at his home at 252 Geneva Drive, Aliquippa, Pennsylvania pursuant to his alleged possession of firearms and related materials in violation of a recent 302 mental health commitment order.

17. The Decedent had a lengthy and well-documented history of mental illness that spanned over seven (7) years ( October 2015 to August 2022). It is believed and averred that all of the Defendant officers were well aware of the Decedent's severe mental health problems.

18. Prior to the execution of the search warrant for the Decedent's home, none of the Defendant officers consulted the Decedent's psychiatric therapist at the Hope Grows Counseling Center when they knew or should have known of the Decedent's 302 history and his suicidal and mental health ideations; instead, they tasered him, placed him in handcuffs, failed to properly search him, and failed to properly restrain him with a seat belt while he sat in the back of a police cruiser.

19. Having not been fully searched nor adequately restrained, the Decedent retrieved a firearm from his person and committed suicide in the back of a Center Township patrol vehicle while he was in custody.

**<u>The Improperly Executed Search Warrant</u>**

20. On August 10, 2022, Officer Kristen Brown and Officer Dennis Fleming of the Center Township Police Department responded to an emergency call regarding Mr. Attila Sooky (the Decedent's father).

21. Fleming and Brown escorted Mr. Sooky back to his home – which he shared with his son, the Decedent -- at 252 Geneva Drive, Aliquippa, Pennsylvania. wherein Brown discovered parts that she believed belonged to a firearm.

22. Officer Brown had prior communications with Sargeant Matzie, Chief Radatvich and Chad Parks (all Center Township Police Officers) regarding the Decedent's history of mental illness and that he previously had been hospitalized per a 302 mental health commitment.

23. Officers Brown, Sargeant Matzie, Chief Radatvich and Officer Parks knew that the Decedent was a person who had been adjudicated as incompetent, had a serious mental health history and that under 18 Pa.C.S.A. § 6105, had been involuntarily committed to a mental institution for inpatient care and treatment under Sections 302, 303 or 304 of the Mental Health Procedures Act, and was not permitted to "possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth."

24. Officer Brown used this information to apply for a search warrant for the Decedent's home at 252 Geneva Drive, Aliquippa, Pennsylvania.

25. The search warrant was authorized by Magistrate Joseph Schafer on August 12, 2022. The search was to take place on or before 11:45 am on August 14, 2022.

26. The Borough of Center Township Department of Emergency Services, Officers Brown, Sargeant Matzie, Chief Radatvich, Captain Hall and Officer Parks all knew that the Decedent was a person who had been adjudicated as incompetent and had a serious mental health history.  All had a duty to inform all other Center Township officers of Mr. Sooky's medical and mental health history prior to the execution of the warrant.

27. The Borough of Center Township, Aliquippa County Department of Emergency Services, Officers Brown, Captain Hall, Sargeant Matzie, Chief Radatvich and Officer Parks failed to notify other responding officers -- when they had a duty to do so -- of the Decedent's serious mental illness prior to the execution of the search warrant on August 12, 2022.

28. On August 12, 2022, at approximately 12:05 p.m., Captain Hall knocked on the Decedent's door at 252 Geneva Drive, Aliquippa Pennsylvania and asked to talk with the Decedent; the Decedent opened the door slightly and Captain Hall asked to speak with the Decedent. The Decedent refused and Captain Hall forcefully pushed open the door and Detective Gonczi and Brown entered the home.

29. Neither Captain Hall, Officer Brown nor Detective Gonczi ever presented a copy of the warrant to the Decedent.

30. Once inside the residence, the Decedent attempted to run/retreat into the kitchen area of his home and Captain Hall and Detective Gonczi physically grabbed him and brought him back towards the front door.

31. Ms. Robin Lesko (the Decedent's mental health therapist) at the Hope Grows Counseling Center previously, on September 22, 2017, informed Patrolman Dennis Fleming of the Center Township Police Department that the "Decedent had been through the mental health system several times and had a history of barricading himself or hiding when he felt as if he was going to be involuntarily committed".

32. Officer Hall alleged he observed a gun in the hand of Mr. Sooky prompting Officers Hall and Gonczi to then apprehend the Decedent to remove the firearm from his hands.

33. Prior to the execution of the warrant, it is believed and therefore averred that as of August 12, 2022 police agencies such as Center Township had a duty to:
    a. Drive by or surveil the subject residence,
    b. Review prior calls regarding the subject residence, and
    c. Determine if the arrestee subject was known to carry firearms or other weapons.
    d. Share detailed particularities regarding the arrestee with other police and medical personnel.

34. The purpose of this industry standard is to determine the appropriate measures that an agency should take to ensure the safety of the police officers, the arrestee, and the public.

35. Center Township officers either departed from these standards prior to the execution of the warrant on August 12, 2022 or they were aware of the Decedent's issues and took no precautions to protect the Decedent from himself.

### The Arrest

36. These tragic events began after a search warrant had been served at the home of the Decedent at 252 Geneva Drive, Aliquippa Pennsylvania 15001 on August 12, 2022.

37. While attempting to execute said warrant, it is believed and averred that Decedent presented a firearm and had to be physically restrained. This restraint required the use of force by the Defendant officers.

38. The Decedent was tasered a number of times by the Defendant Officers pursuant to his arrest.

39. Subsequent to his arrest, officers placed the Decedent in a prone position on his stomach, where he remained for a lengthy period of time during which the Defendant officers had an adequate period of time to secure and search him before they placed him in Officer Peake's transport vehicle.

40. While the Decedent laid in the prone position, none of the Defendant officers checked his handcuffs to ensure that they were secured to prevent the Decedent from accessing any weapons that could be used to harm himself or others.

41. Following the Decedent's arrest, Defendant Captain Hall of Center Township placed handcuffs on the Decedent but failed to properly secure them.

42. Additionally, neither Captain Hall nor any of the other police Defendants searched the Decedent to determine if he had any additional weapons on his person.

43. Captain Hall ordered Officers Peake and Hepler to transport the Decedent to the Center Police station.

44. Defendant Captain Jon Hall, hereinafter, "Captain Hall", of the Center Township Police Department placed handcuffs on the Decedent but failed to search him for weapons that he could use to harm himself or others.

45. All Defendant Officers knew of the Decedent's vulnerability and previous suicide attempts, yet none of them properly checked his handcuffs to ensure that they were properly secured or searched his person to make sure that he had no weapons that he could use to harm himself.

46. Defendant Darin Hepler assisted Captain Hall secure the Decedent with handcuffs but also failed to search him for weapons that he could use to harm himself or others.

    a. Mr. Hepler was on top of the Decedent but failed to search him for a gun.
    b. Hepler had no first aid equipment on him when he realized the Decedent was injured and required medical care.

47. None of the Defendant officers, including Captain Hall, at any point checked the Decedent to ensure that his handcuffs were secure or to check if he had any weapons on his person from which he could harm himself or others.

48. Defendant Officers Calvin Peake (hereinafter "Peake") and Darin Hepler (hereinafter, "Hepler") then escorted the Decedent to Peake's transport vehicle to transport him to jail.

49. The Decedent was placed into Officer Peake's transport vehicle.

50. During the Decedent's transport, Officers Peake and Hepler failed to properly seatbelt the Decedent to restrict his movement so as to limit his ability to access weapons that he had on his person when they knew or should have known of his suicidal ideations.

51. Proximate to Defendants Hall, Peake and Hepler's failures, the Decedent was able to gain access to a firearm he had in his waist band and shot himself in the mouth during this transport.

52. The Decedent's injuries were mortal. A video of the interaction captured this horrific moment.

53. Had the Decedent been properly searched and secured, he would have been prevented from accessing weapons to harm himself.

54. As a consequence of his death, the Decedent was deprived of the pleasures and enjoyment of life, liberty, and the pursuit of happiness.

55. The Defendant officers were recklessly and deliberately indifferent to the Decedent's medical needs and safety.

## Past Suicidal Ideations and Threats of Violence

56. The Decedent had a lengthy documented history of suicidal ideations of which the Center Township police department and its officers were well aware.

57. On multiple occasions between October 31, 2015 through August 12, 2022, the Decedent had multiple incidents with the Center Township Police department wherein:

    a. He threatened to commit suicide,

    b. He threatened violence upon others,

    c. He was in possession of multiple firearms,

    d. He had a history of being committed to mental health hospitals and other medical facilities, and

    e. He displayed other obvious characteristics indicative of a person with a serious mental illness.

58. Since October of 2015, the Decedent had numerous interactions with the police wherein it would have been obvious to even a lay person that he had serious mental health issues that required treatment, and at least once, his wife, Andrea Sooky, warned Patrolman Jeff Stone of the Center Township Police Department that the Decedent had:

    a. Made threats in the past about killing himself; and

    b. Placed a gun in his mouth, stating he would commit suicide.

59. Upon information and belief, on September 22, 2017, Robin Lesko, an intern at the Hope Grows Counseling Center, at 183 Shafer Road, Moon Township, Pennsylvania, advised Patrolman Dennis Fleming of the Center Township Police Department that over the previous weeks, the Decedent made several comments about depression and placing a gun in his mouth, and had been through the mental health system several times and needed medical treatment. Officer Fleming and the Defendant Officers knew the Decedent was in need of serious medical treatment, but none of them took any steps to protect him from himself.

60. Additionally, one (1) or more officer Defendants were instructed to perform a welfare check upon the Decedent' because he was:

    a. Threatening to harm himself;

    b. Ingesting a mixture of drugs, was attempting to overdose and was in possession of a firearm; and

    c. Needed to receive immediate mental health treatment by application of a 302-commitment process.

61. Historically, Center Township through its police department, was well aware of the Decedent's mental health infirmities and suicidal ideations when they encountered the Decedent in the following instances:

| **Date** | **Time** | **Instance** | **Center Township Involved Officers** |
|---|---|---|---|
| October 31, 2015 | 22:55 Hours | 1. Patrolman Jeff Stone encountered Mrs. Andrea Sooky (the Decedent's wife; hereinafter, Mrs. Sooky) at the Center Township police station.<br><br>2. Mrs. Sooky alleged that she and her husband had argued when he came home late after drinking.<br><br>3. She stated that he became verbally abusive and that he claimed he would "open her head."<br><br>4. ***She told Officer Stone that her husband had made threats in the past about killing himself and had placed a gun in his mouth, stating he would commit suicide***. | Patrolman Jeff Stone |

| September 22, 2017 | 19:40 Hours | 1. Robin Lesko, a counselor at the Hope Grows Counseling Service, arrived at the Center Township Police Department to drop off 302 paperwork for an involuntary commitment.<br><br>2. ***Ms. Lesko advised Patrolman Dennis Fleming that over the previous few weeks, the Decedent had made several comments about depression and placing a gun in his mouth.***<br><br>3. She stated to Officer Fleming that the Decedent had been through the mental health system several times ***and had a history of barricading himself or hiding when he felt as if he was going to be involuntarily committed.*** | Patrolman Dennis Fleming |
|---|---|---|---|
| November 14, 2017 | 10:00 Hours | 1. Officer Zachary Spearing was dispatched by Mr. Ankur Paul to perform a welfare check at the Decedent's home at 252 Geneva Drive, Aliquippa Pennsylvania. ***It was alleged that the Decedent was making suicidal comments threatening to harm himself*** and had not arrived at work at his dentist office in Ambridge, Pennsylvania.<br><br>2. Mr. Paul also alleged that the ***Decedent had ingested a mixture of drugs and was attempting to overdose*** and was in possession of a firearm.<br><br>3. Officer Spearing requested to enter the residence to talk with the Decedent. ***The Decedent denied his request and stated, "If I let you in, it's all over."***<br><br>4. The Officer observed that the Decedent had bloodshot, glossy eyes and had difficulty focusing on the questions asked of him.<br><br>5. Officer Spearing contacted Defendant Captain Hall and apprised him of the situation.<br><br>6. **Officer Spearing then petitioned for a 302-commitment based on the comments the Decedent made to him.**<br><br>7. **Defendant Captain Hall arrived on the scene with Officer Spearing and they both entered the Decedent's home wherein Mrs. Sooky showed them the Decedent's open safe wherein the Decedent stored approximately five (5) guns.** | Officer Zachary Spearing<br><br>Defendant Captain Hall |

| | | | |
|---|---|---|---|
| | | 8. The officers failed to take possession of the weapons; instead, they instructed Mrs. Sooky to simply prevent the Decedent from having access to the safe key.<br><br>9. The Decedent was transported by ambulance to Heritage Valley Hospital in Aliquippa, Pennsylvania. | |
| September 3, 2021 | 12:13 Hours | 1. Patrolman Jon Hawk was dispatched to the Decedent's home.  He and other officers were advised that the Decedent was having trouble breathing.<br><br>2. **When they arrived, they found the Decedent's breathing was shallow and gurgling**.<br><br>3. **They administered a dose of Narcan which is generally given to patients who overdose**, and the Decedent became responsive two (2) minutes later. | Patrolman Jon Hawk |
| July 25, 2022 | 5:39 Hours | 1. Officer Eric Hill was advised that an ambulance was responding to the Decedent's home at 252 Geneva Drive to address medical/mental health issues concerning Decedent's father.<br><br>2. The medics advised police that while inside the residence, they observed a large cache of weapons, ammunition, cameras, targets on walls, and shrines. | Patrolman Eric Hill |
| July 25, 2022 | 6:19 Hours | 1. Mrs. Magdalena Sooky, the Decedent's mother, called dispatch and stated that after the medics left her home, the Decedent poked her in the head. She also related  that he has a ***history of mental illness and is very aggressive***. | Patrolman Kristen Brown |
| August 10, 2022 | 22:21 Hours | 1. Mr. Robert Martini, the Decedent's neighbor, called dispatch to report that Mr. Attila Sooky, the Decedent's father who suffers from dementia, was walking around in front of his house, yelling for his wife and son.<br><br>2. Officers Kristen Brown and Fleming arrived at the Decedent's residence and escorted him back home to 252 Geneva Drive, Aliquippa Pennsylvania wherein Officer Brown found parts for multiple weapons. | Patrolman Kristen Brown<br><br>Patrolman Dennis Fleming |

| | | 3. *Officer Brown realized the Decedent had a history of mental illness and had been 302'd in the past and was not permitted to possess a firearm.* | |
|---|---|---|---|

## **The Transport**

62. Defendant Officers Peake and Hepler were tasked by Defendant Captain Hall with the responsibility of transporting the Decedent to the Center Police station in Defendant Peake's patrol car.

63. All Defendants, including but not limited to Officers Hall, Peake and Hepler, knew or should have known of Sooky's particular vulnerability to suicide by firearm and yet acted recklessly indifferent to that vulnerability.

64. The Center Police Department advised its officers through its Policy 20:1(e) and (f), entitled "*Prisoner Search & Escort,*" that physical contact between an arrestee and arresting officer is potentially dangerous in every arrest situation. Thus, officers must double lock a suspect's handcuffs and quickly search the arrestee for weapons. See the attached Exhibit "1".

65. All the Defendants were aware or should have been aware of this policy to search and properly restrain with seat belts arrestees such as the Decedent when they are taken into police custody to prevent them from harming themselves or others.

66. All the Defendants acted recklessly and were indifferent to the serious medical needs of the Decedent.

67. The Defendants were deliberately indifferent to the serious medical needs of the Decedent and his particular vulnerability to suicide. The Defendants were aware that his mental health history suggested a strong likelihood, rather than a mere possibility, that he might again attempt suicide.

68. The Decedent's extensively documented history of mental health illness, threats of suicide by firearm, and attempted suicide created a degree of risk which represented a strong likelihood that if the Decedent was not properly searched and secured after arrest, that self-inflicted harm would occur.

69. All Defendants had actual knowledge of the Decedent's obvious serious suicide threat, history of suicide attempts, and his psychiatric diagnosis identifying suicidal propensities.

70. The Decedent's strong likelihood of suicide was so obvious that Defendants should have recognized the necessity to protect him from himself. The Decedent's documented

history of suicidal behavior, including prior attempts to kill himself and/or declared thoughts about killing himself, demonstrated such a strong likelihood.

71. The Decedent was a mentally ill, depressed person who previously attempted to kill himself multiple times, had engaged in self-harm, declared he had been thinking about killing and harming himself, and had made an actual plan of how he would carry out his own suicide; accordingly, the risk of him committing suicide from not being properly searched and secured was strongly likely.

72. The Defendants acted with reckless and or deliberate indifference to the Decedent's particular vulnerability to suicide.

73. Suicide by detainees in patrol cars is a well-known and reported occurrence.[1]

74. The Defendants should have taken precautions to ensure that the Decedent was unable to harm himself while detained in their custody.

75. The purpose of handcuffing a person when taking them into custody is, in part, to protect the detainee from hurting himself. It is easier for that to occur if the detainee is properly searched and restrained.

76. The purpose of frisking a detainee is, in part, to discover any weapons on that person's body so the detainee cannot use those weapons to hurt himself.

77. Upon information and belief, Center Police officers, including the Defendant Officers Hall, Peake and Hepler, were and are required to perform a thorough search of any arrestee -- such as the Decedent -- that they take into custody to discover any weapons they may have on their person.

---

[1] *See, e.g.,* Billy Gunn, *Experts: Suicide of Handcuffed Man in Squad Car Rare, but Not Unique,* The Acadiana Advocate (Sept. 1, 2014), https:llwww.theadvocate.comlacadiana/news/article _adeda 7 50-6d26-5e5d-aS f9- dcb3de417bbd.html; Carimah Townes, *Police Say a Handcuffed, Suicidal Man Shot Himself in the Head,* ThinkProgress.org (Jan. 9, 20 17), https:llthinkprogress.orglaustin-police-say-suspect-shot-himself-in-the-back-of-a-police-car-d93dd749d5b/; Charlene Muhammad, *Suicide While Handcuffed,* The Final Call (Aug. 15, 2012), http://www.finalcall.comlartmanipublishINational_News_2/article _9116.shtml; Jeff Branscome, *Suicidal Man Shoots Himself While Handcuffed in Back of Spot sylvania Sheriff's Office SUV,* Fredricksburg.com (Sept. 10,2018), https:/ /www.frcdcricksburg.com/news/ crime _ courts/suicidal-man-shoots-himseIf-wh ile- handcuffed - in-back -of- spotsylvania/article _ eb 16f599-06f3-517d-9629-2b4be70fl25c.html; Kelly McLaughlin, *Virginia Officials Say a Woman Shot Her Self in the Face While Handcuffed During a Traffic Stop,* Insider (Mar. 18, 2019), https:/ /www.insider.comlsarah-wilson-committed-suicide-handcuffed-chesapeake-police-20 19-3; Latifah Muhammad, *Ohio Police Claim Teen Committed Suicide While Handcuffed in the Back of a Squad Car,* VIBE (Aug. 30, 2017) https://www.vibe.coml20 7/08/ohio-police-xavier-mcmullen-suicide-claim-handcuffed-squad-car; *Handcuffed Teen "Shot Himself" in Back of Cop Car,* New York Post (Jan. 14, 2014), https://nypost.com2014/01/11 handcuffed-teen-shoots-self-in-back-of-cop-car/; Rebecca Everett, *A Handcuffed Man Killed Himself with a Cop's Gun. 6 Months Later, Officials Still Won't Say What Went Wrong,* NJ.com (Jan 9, 2019).

78. Despite the risk that the Decedent posed to himself and others, the Defendant officers failed to perform a reasonable search of the Decedent and failed to locate a KAHR 9 mm semi-automatic handgun that the Decedent placed on his waist. A 9 mm semi-automatic handgun is large enough that it would have been discovered if the Defendant officers had conducted a reasonable search of the Decedent's person.

79. The Defendants had actual knowledge of the Decedent's vulnerability to suicide, history of suicide attempts and/ or his diagnosis which identified suicidal propensities, from the records and reports prepared and maintained by the Defendant Center Township.

80. Upon information and belief, the Decedent was agitated, nervous, and morose when he was arrested and handcuffed by the Defendant police officers and placed in the back of Defendant Peake's squad car.

81. It was well-known in the community that the Decedent had mental health problems at a time before his arrest.

82. Upon information and belief, the threat of significant jail time and the increased possibility that the Decedent was under the influence of a controlled substance due to a past history of attempted suicide by drug overdose were sufficient factors for the Defendants to reasonably foresee that the Decedent would constitute a threat to himself.

83. The Defendants, acting under the color of law, exhibited deliberate indifference to the Decedent when they knew of and disregarded an excessive risk to his health or safety.


**Failure To Seize and Secure Firearms**

84. On September 22, 2017, Ms. Robin Lesko, a counselor at the Hope Grows Counseling Service, arrived at the Center Township Police Department to drop off 302 paperwork for an involuntary commitment of the Decedent. She told Patrolman Dennis Fleming that:

   a. Over the previous few weeks, the Decedent had made several comments to her about being depressed and placing a gun in his mouth; and

   b. The Decedent had been through the mental health system several times and had a history of barricading himself or hiding when he felt as if he was going to be involuntarily committed.

85. Subsequent to Ms. Lesko securing a 302 mental health commitment for the Decedent, Officer Fleming should have removed the Decedent's firearms from his home. His failure to do so was proximate to the Decedent's death.

86. On November 14, 2017, Officers Zachary Spearing and Defendant Captain Hall entered the home of the Decedent because he:

   1.   Was making suicidal comments;
   2.   Was threatening to harm himself,
   3.   Was attempting to overdose and was in possession of a firearm;
   4.   The Decedent told Officer Spearing "If I let you in [my house], it's all over;"

   based upon these representations Officer Spearing secured a 302-commitment for the Decedent.

87. Based upon the above representations Spearing and Hall and their supervising officers had a duty to seize or remove the five (5) firearms the Decedent kept in his safe.

88. Subsequent to Officers Spearing and Captain Hall's securing a 302 mental health commitment for the Decedent, they should have removed the Decedent's firearms from his home. Their failure to do so was proximate to the Decedent's horrific death.

89. On July 25, 2022, Officer Eric Hill was advised by an ambulance unit that was responding to the Decedent's home at 252 Geneva Drive, Aliquippa, Pennsylvania that they observed a large cache of weapons, ammunition, cameras, targets on walls, and shrines in the Decedent's home.

90. On July 25, 2022, the Decedent had been involuntarily committed per a secured 302, following which he was not legally able to possess a firearm.  This should have prompted Officer Eric Hill to remove the Decedent's firearms from his home. His failure to do so was a proximate cause of the Decedent's death.

91. Any Center Township Chief, Captain, Detective, Patrolman, or employee that knew of the Decedent's past mental health problems and suicidal ideations had a duty to communicate this information to any other Center Township Police officer prior to the execution of the search warrant on August 12, 2022 at 252 Geneva Drive Aliquippa, Pennsylvania.

92. The Center Township Department of Emergency Services an entity of Defendant Center Township knew of the Decedent's past mental health problems and suicidal ideations and had a duty to communicate this information to the Center Township Police officers that

were expected to execute/serve the search warrant upon the Decedent on August 12, 2022 at 252 Geneva Drive Aliquippa, Pennsylvania.

93. This is a civil rights action seeking damages collectively against the above-captioned Defendants for violations of the Decedent's rights, privileges, and immunities guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983 and Pennsylvania common law.

## COUNT ONE

**42 U.S.C. § 1983: DELIBERATE INDIFFERENCE TO CITIZEN'S MEDICAL NEEDS AGAINST CENTER TOWNSHIP, OFFICER WILLIAM CALVIN PEAKE, individually and in his official capacity, DARIN K. HEPLER, individually and in his official capacity, KRISTEN BROWN, individually and in her official capacity, CAPTAIN JON HALL, individually and in his official capacity and THOMAS GONCZI, individually and in his official capacity.**

94. Plaintiff realleges each allegation contained in the preceding paragraphs as if set forth separately herein.

95. The Fourteenth Amendment requires law enforcement agencies to protect detainees from physical harm while they are in custody, including from the known risk of suicide.

96. Center Township and its Defendant officers knew, or should have known, of the risk of the Decedent committing suicide while in custody given:

 (a) his long and known history of mental health problems, suicidal thoughts, and suicidal attempts,
(b) his known possession of a large number of firearms,
(c) the insufficient search of his person after being arrested, and
(d) the inadequate handcuffing of him, so as to permit him access to a weapon secured on his body.

97. Despite knowing that suicides can and do occur while a suspect is in custody, according to information and belief, Center Township has not implemented any policies to recognize and deal with this dangerous situation. Such a failure to provide such training in light of the likelihood of suicide while in custody constituted deliberate indifference to the risk of suicide inherent in pretrial detainees, particularly those pretrial detainees who have demonstrated that they have mental health histories with suicidal ideations and attempts.

98. Defendant Officers, Hall, Peake, Brown and Gonczi acting under color of state law, deprived the Decedent of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, by preventing and denying him critical medical attention. These defendants knew or should have known that the Decedent needed immediate psychiatric treatment and posed a suicide risk, yet they:

    a. Failed to assess the Decedent's physical or mental condition, despite him being tased multiple times, forcibly handcuffed, and otherwise showing clear signs of medical and psychic distress;

    b. Failed to call paramedics to assess the Decedent's condition, despite him being tased multiple times, and then forcibly handcuffed as well as otherwise showing clear signs of medical and psychic distress;

    c. Failed to transport the Decedent to the nearest hospital, to be medically cleared before taking him to the Center Township Police Department;

    d. Captain Hall directed the Decedent to be transported to the Center Township Police Department without having the paramedics arrive to assess the Decedent's physical and/or psychiatric health; and

    e. Failed to ensure that Decedent was not in possession of a firearm and failed to protect the Decedent from himself (committing suicide) while in police custody.

99. As such, Center Township has been deliberately indifferent to the risk that a detainee with previous suicidal ideations may commit suicide while in custody and in squad cars.

100. The Decedent and the other Plaintiffs have been harmed by the Decedent's death.


**COUNT TWO**
**42 U.S.C. § 1983: MONELL LIABILITY CLAIMS**
**AGAINST CENTER TOWNSHIP**

101. Plaintiff repeats, reiterates and realleges each and every allegation contained herein above with the same force and effect as if hereinafter set forth at length.

102. Center Township knowingly permits a custom of deliberate indifference by its police department in the screening of its' officers. As a direct and proximate result of this custom, and as is highly likely, incompetent individuals, including but not limited to

Defendant Officers Gonczi, Brown, Peake, Hepler and Hall, became police officers for Center Township.

103. Furthermore, due to said incompetence, the Center Township Police Department substantially increased the risk that said incompetent officers would violate the civil rights of, *inter alia*, the Decedent who was injured and died as a direct and proximate result of this custom. Plaintiff expects that discovery will reveal a myriad of additional examples of this custom.

104. Center Township knowingly permits a custom of failing to train its officers in how to assess and evaluate arrestees who are suffering from mental illness and other psychiatric disabilities. The Decedent was injured and died as a direct and proximate result of this custom. Plaintiff expects that discovery will reveal a myriad of additional examples of this custom.

105. Center Township knowingly permits a custom of failing to provide medical equipment to its officers to provide medical care to arrestees who are suffering physical injuries. The Decedent was injured and died as a direct and proximate result of this custom. Plaintiff expects that discovery will reveal a myriad of additional examples of this custom.

106. Center Township lacks a policy directing officers how to confront suspects or otherwise gain custody of persons with mental health infirmities that need or require medical care, and requiring the arresting officer, officer in charge, or any other officer on the scene to medically and or psychiatrically assess the arrestee. Such a policy was necessary given the extremely high likelihood that, in the course and scope of a police officer's duties, they would encounter criminal suspects with known mental health problems, including a history of suicidal ideations and/or attempts.

107. As a direct and proximate result of the absence of this policy, it was/is highly likely that medical assessment and/or treatment is delayed for arrestees. This substantially increased the risk that officers would violate the civil rights of, *inter alia*, the Decedent, who was injured and died as a direct and proximate result of the absence of such a policy.

108. Center Township knowingly permits a custom of deliberate indifference in the training, supervision, and discipline of its police officers. Particularly, the Police Department failed to:

   a. Train Officers Gonczi, Brown, Hall, Hepler and Peake as to the proper procedures to search, and/or arrest a suspect;

    b.  Train Officers Gonczi, Brown, Hall, Hepler and Peake as to the proper manner in which to medically and /or psychiatrically assess arrestees;

    c.  Train Officers Gonczi, Brown, Hall, Hepler and Peake to provide medical treatment to arrestees;

    d.  Adequately supervise  Officers Gonczi, Brown, Hall, Hepler and Peake to ensure that they properly searched and/or arrested suspects;

    e.  Adequately supervise  Officers Gonczi, Brown, Hall, Hepler and Peake to ensure that they properly medically assessed arrestees such as the Decedent and/or provided medical treatment to arrestees;

    f.  Discipline its officers who did not comply with proper procedures for searching and/or arresting suspects; and/or;

    g.  Discipline its officers who did not  properly medically assess arrestees and/or provide them with medical treatment.

109. Such failures would obviously lead to constitutional violations, yet, this Defendant allows officers, including but not limited to Officers Gonczi, Brown, Hall, Hepler and Peake, to remain on the force. This substantially increased the risk that officers would violate the civil rights of, *inter alia*, the Decedent, who was injured and died as a direct and proximate result of these customs, policies, and absence of policies. Plaintiff expects that discovery will reveal a myriad of additional examples of these customs.

110. As a direct and proximate result of the above referenced customs and/or lack of policies, the Decedent suffered the injuries, damages and death described above in an amount to be determined at trial.

<u>**COUNT THREE**</u>

**42 Pa.C.S. § 8301-8302:  WRONGFUL DEATH and SURVIVAL AGAINST CENTER TOWNSHIP AND OFFICER WILLIAM CALVIN PEAKE**, individually and in his official capacity, OFFICER **DARIN K. HEPLER**, individually and in his official capacity, **CAPTAIN JON HALL**, individually and in his official capacity, OFFICER **THOMAS GONCZI**, individually and in his official capacity, and OFFICER **KRISTEN BROWN**, individually and in her official capacity.

111. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

112. This count is brought for the benefit of the Decedent's estate and beneficiaries: Magdalena Sooky and Attila Sooky (parents).

113. The Defendants, acting within the scope of their employment, recklessly and deliberately caused the death of the Decedent, as previously described in this lawsuit.

114. Defendant officers were under a duty to provide for the safety and protection of the Decedent while he was in the custody of the Center Township Police Department.

115. Upon information and belief, the Center Township Police Department has a written policy that mandates that an arresting officer is responsible for the safety and protection of an arrested person while in his or her custody.

116. Upon information and belief, Center Township Police Department also has a policy that mandates that the arresting officer is responsible for the security of the personal property in the arrested person's possession at the time of the arrest.

117. By recklessly failing to search the Decedent and failing to properly secure his hands when the Defendant officers knew of the Decedent's past suicidal history and ideations, the Defendant officers and Center Township failed to provide for the Decedent's safety and protection.

118. These failures constituted a breach of the Defendant Officers' and Center Township's duty to ensure the safety of the Decedent while in their custody.

119. Defendant Center Township is responsible for its employees' actions taken in the scope and course of their employment as employees, police officers, and medical personnel for the Township.

120. As a direct and proximate result of said violation, the Defendants' failing to properly search and secure the Decedent during his detention and transport, despite knowing of his long history of severe mental health problems including suicidality, the Decedent and the heirs to his estate incurred pain and suffering, medical, funeral, and other expenses related to the administration of the Estate, for which recovery is due to his heirs.

121. Additionally, Decedent's heirs are entitled to compensation for the loss of the Decedent, and the antecedent benefits to him being alive to include, *inter alia*, love, guidance, and care.

122. Additionally, given the Defendants' outrageous behavior, suggesting a reckless indifference to the rights of Mr. Sooky – given the officers' knowledge of the Decedent's long history of mental health problems punctuated by multiple threats to commit suicide,

the exacerbation of his mental health disability caused by being tased and handcuffed, their knowledge that he owned many firearms, their failure to fully search him to ensure that he was not in possession of a gun, their failure to properly seatbelt and secure him during transport, and their failure to provide him medical and mental health care upon being arrested -- Plaintiff suggests that the heirs are entitled to punitive damages on behalf of the individual Defendants.

123. As a result of the Defendant officers' and Center Township's breaches, the Decedent and the other Plaintiffs have been injured in an amount exceeding this Court's jurisdictional amount of $75,000.00.

## <u>COUNT FOUR</u>

**42 U.S.C. § 1983: DELIBERATE INDIFFERENCE TO CITIZEN'S RIGHT NOT TO BE SUBJECT TO UNREASONABLE SEARCHES AGAINST CENTER TOWNSHIP, OFFICER WILLIAM CALVIN PEAKE, individually and in his official capacity, DARIN K. HEPLER, individually and in his official capacity, KRISTEN BROWN, individually and in her official capacity, CAPTAIN JON HALL, individually and in his official capacity and THOMAS GONCZI, individually and in his official capacity.**

124. Plaintiff realleges each allegation contained in the preceding paragraphs as if set forth separately herein.

125. The United States' Constitution protects citizens against unreasonable searches.

126. A reasonable search of the Decedent would have uncovered the 9 mm handgun deposited in the Decedent's waist.

127. Considering that more than one (1) officer had contact with the Decedent and yet none of the officers failed to search him or ensure the security of his handcuffs, it is averred that officers employed by Center Township have a pattern, practice, or custom of failing to adequately search arrestees, particularly those arrestees with mental health histories, to uncover and remove deadly weapons.

128. Furthermore, upon information and belief, Center Township has a policy, practice, and custom of failing to train its officers on how to conduct reasonable searches to locate weapons.

129. If the Defendant officers had been adequately trained and supervised, they would have performed a reasonable search on Decedent and discovered his handgun.

130. During the execution of the search warrant, the Decedent had to be forcefully detained because he presented a firearm.  This, along with the officers' knowledge of the Decedent's long history of mental illness coupled with their knowledge of his gun ownership, should have provided the Defendant officers with reasonable notice of the Decedent's suicidal propensities.

131. Given the Decedent's possession of a firearm, and his previous history of suicidal ideations and attempts, reasonable officers knew or should have known that they were required to take increased steps to protect the Decedent from himself.

132. The Defendant officers knew or should have known that the Decedent was tased multiple times. The Decedent was then forcibly handcuffed. Furthermore, at the time of his detention, the Decedent was extremely depressed and had a lengthy history of suicide. Each of the Defendants knew or should have known all of these facts, which should have led to the belief that the Decedent was in need of immediate medical and psychiatric treatment.

133. Defendant officers, acting under color of state law, deprived the Decedent of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and by failing to properly search and secure him to ensure that he was not a danger to himself or others.

134. These Defendants knew or should have known that the Decedent needed immediate medical and mental health treatment, and needed to be protected from self-harm, yet they:

    a. Failed to properly secure the Decedent's hands to prevent him from gaining access to weapons that he could use to harm himself or others; and;

    b. Failed to properly search the Decedent's person after he was taken into custody to ensure that he was not in possession of any weapons that he could use to harm himself or others.

135. As a direct and proximate result of the above actions, the Defendants' failure to properly search the Decedent and to secure his hands resulted in his ability to commit suicide while in the officers' custody.

136. As a direct and proximate result of the above actions, the Defendants' failure to provide medical assistance to the Decedent prolonged his pain and suffering and caused his mental health to worsen which led to his death.

137. The Defendants' actions and/or inactions also violated Center Township Policy 20:3 (f), in that the Decedent should have been quickly searched for weapons in his:
   1. Head, hat, other headgear,
   2. Collar and shoulder area,
   3. Front of chest, and armpits-pockets,
   4. Center, middle, and lower back,
   5. ***Front of abdomen, belt, and waist area,***
   6. All pants pockets,
   7. Each leg, starting at the crotch area, and working to his shoe.
      Please see the Plaintiff's attached "Exhibit 1."

138. The Defendants' actions and/or inactions also violated Center Township Policy 21:3.3 which requires that prior to transport, all prisoners, including the Decedent, be thoroughly searched for weapons or tools of escape. Please see the Plaintiff's attached "Exhibit 2."

139. Upon information and belief, the Defendants' deliberate indifference to the serious medical and mental health needs of the Decedent and failure to provide him medical treatment proximately caused his injuries, pain, suffering, and death, for which the Defendants must pay damages.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(A) An order declaring that Defendants' conduct violated the Decedent's rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

(B) An order granting compensatory damages, jointly and severally where appropriate, in an amount to be determined at trial;

(C) An order awarding punitive damages against the individual defendants in an amount to be determined at trial; and;

(D) An order awarding Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988, as well as any other relief that this Court finds appropriate and based on the evidence at trial.

JURY TRIAL DEMANDED.

                                        TODD J. HOLLIS LAW

                                        By:/s/ Todd J. Hollis
                                        Todd J. Hollis, Esquire
                                        Supreme Court I.D. No. 72510
                                        202 Penn Plaza

Turtle Creek, Pennsylvania
412.515.4483 Phone
412.646.5748 Facsimile
toddjhollis@gmail.com
Counsel for the Plaintiff:
Csaba Bessko Individually and as Executor
of Arpad Sooky, Decedent, and on behalf of
the Estate's Beneficiaries, Magdalena Sooky
and Attila Sooky.

Date:  October 15, 2023.